UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DESYIAH LEAK,

      *Plaintiff*,

  v.

CITY OF PATERSON, et al.,

      *Defendants*.

No. 22-cv-06994 (MEF)(JBC)

**OPINION and ORDER**

\* \* \*

For the purposes of this brief Opinion and Order, the Court largely assumes familiarity with the allegations and procedural history here.

\* \* \*

The relevant allegations[1] for now are as follows.

In 2020, while driving, a woman[2] was pulled over by two city police officers.[3] See Complaint at 4 ¶¶ 1-2. The woman's sister was riding in the car as a passenger. See id. ¶ 1.

After approaching the vehicle, one of the officers ordered the woman to "get out of the fucking car," id. ¶ 5, and then, after

---

[1] Because this is a motion to dismiss, the Court must treat all of the allegations as true. See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009). Whether they are in fact true --- that is a question for later in the case.

[2] Desyiah Leak.

[3] The police officers: Kendry Tineo and John Annaloro. The city they worked for: Paterson.

the woman asked for an explanation, punched her in the face. See id. ¶ 6.

The woman then tried to move out of the way, but the officers dragged her from the car. See id. at 5 ¶ 10-12. While she was being put under arrest, one of the officers "violently shoved" her and punched her in the face a second time. See id. ¶ 13.

\* \* \*

In light of the above, the woman filed a lawsuit. She is referred to from here as "the Plaintiff."

The Plaintiff sued a set of defendants. The one that is relevant here is the city that employed the police officers, Paterson. From here, the City of Paterson is "the Defendant."

There are two live claims against the Defendant, a federal claim and a state claim.

\* \* \*

Take the federal claim as the starting point.

It arises under 42 U.S.C. § 1983.

The gist of the § 1983 claim: the Plaintiff's federal constitutional rights were violated, because the Defendant's police officers (a) stopped and seized her without probable cause, and (b) treated her with too much force. See Complaint at 9 ¶¶ 2-4.

For this, the Plaintiff argues, she can recover damages from the Defendant.[4]

Why?

Because the Defendant allegedly had a custom of tolerating improper stops and seizures and the use of excessive force, see id. at 10 ¶¶ 2-5 --- and that custom helped to cause these constitutional violations. See id.; see generally Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978) (local governments can be sued under § 1983 for

---

[4] The Plaintiff has decided not to continue to pursue some of her other claims. Those are the subject of a separate Order, issued later today.

constitutional injuries caused by an official policy or governmental custom).[5]

\*   \*   \*

The Defendant has moved to dismiss the federal claim described just above under Federal Rule of Civil Procedure 12(b)(6).

It argues that there was no custom, and that if there was one it did not cause the Plaintiff's alleged injuries.  See Motion to Dismiss at 14-21.

\*   \*   \*

Move now to the state-law claim.

This claim arises under the New Jersey Civil Rights Act.  See Complaint at 11 ¶ 1 to 12 ¶ 5 (fourth cause of action); N.J.S.A. 10:6-2(c).

The substance of this claim is identical to the substance of the federal claim, as discussed just above.

And the Defendant also seeks to dismiss the state claim.

How to proceed?

The New Jersey Civil Rights Act "is modeled off of the analogous Federal Civil Rights Act, 42 U.S.C. § 1983[.]"  Tumpson v. Farina, 218 N.J. 450, 474 (2014) (cleaned up).

---

[5] A note.  The Plaintiffs allege a failure by the Defendant to train and supervise police officers, see Complaint at 10 ¶ 3, plus a failure to discipline officers.  See id. ¶ 4.  In many cases, these sorts of allegations are the basis for a free-standing claim for failure to train or supervise.  (And indeed, the legal standards for a conventional policy/custom claim are different than the standards for a failure to train/supervise claim.  See, e.g., Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019); Est. of Kamal v. Twp. of Irvington, 790 F. App'x 395, 398 (3d Cir. 2019).)  But here, the Plaintiff has not pressed an independent claim for failure to train or supervise.  This is plain from the Complaint.  It includes one "Monell" claim, see Complaint at 10, and the failure to train and supervise allegations arise under that claim, not in addition to it.  See id. ¶ 3.  Moreover, the failure to train and supervise allegations are pleaded by the Plaintiff as "specific[]" instances of her broader "Monell" custom claim.  See id.

3

Accordingly, claims arising under the New Jersey Civil Rights Act and claims under § 1983 are generally treated as rising and falling together.  That is, if § 1983's standards are met, then both the § 1983 claim and the New Jersey Civil Rights Act claim can go forward.  But if the § 1983 bar is not cleared, then neither the federal nor the state claim gets off the ground.  See, e.g., Mervilus v. Union Cnty., 73 F.4th 185, 193 n.4 (3d Cir. 2023) (proceeding in this way); Roman, 914 F.3d at 796 n.5 (same); Gray v. Univ. Corr. Healthcare Rutgers, 2024 WL 726642, at *2 (D.N.J. Feb. 21, 2024) (same).[6]

* * *

Bottom line: the Defendant moves to dismiss the Plaintiff's federal § 1983 claim and her state-law New Jersey Civil Rights Act claim, and the Court will analyze these claims together, under federal § 1983 standards.

* * *

At this stage of the litigation, the Plaintiff must plausibly allege that she has stated a claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Recall that the Defendant says she has not done so for two reasons.

First, because the Plaintiff does not properly allege that there was a relevant "custom."  See Motion to Dismiss at 16-17, 20.

And second, because the Plaintiff does not properly allege that any custom caused her alleged injuries, see id. at 17, the ones she suffered because of the traffic stop during which she was allegedly pulled out of her car and punched by certain of the Defendant's police officers.

* * *

Take these one at a time, starting with causation.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a

---

[6] The parties' papers assume that this is the right approach. See Motion to Dismiss at 21-22; Plaintiff's Opposition Brief at 13; Defendant's Reply Brief at 6.

4

municipal . . . custom and the alleged constitutional deprivation.").

To clear the causation bar, a "plaintiff must allege that [the] . . . custom [she alleges] inflicted the [alleged] injury in question." Roman, 914 F.3d at 798 (cleaned up).[7]

> A plaintiff must . . . allege that the . . . custom was the proximate cause of h[er] injuries. [Sh]e may do so by demonstrating an affirmative link between the policy or custom and the particular constitutional violation [s]he alleges. This is done for a custom if [the plaintiff] demonstrates that [the defendant-city in question] had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [her] injury.

Id. (cleaned up).

In Estate of Roman v. City of Newark, the Third Circuit held that a Newark "custom" of unlawful searches by police officers was plausibly a proximate cause of a particular unlawful Newark police search of the plaintiff. Per the Roman Court:

> [T]he [Newark] Police Department was aware of [complaints of "improper searches and false arrests"] but rarely acted on [such] citizen complaints. In light of these allegations, it is logical to assume that [Newark's] continued official tolerance of repeated misconduct facilitated similar unlawful actions in the future, including the search and arrest of [the plaintiff].

Id. at 799 (cleaned up).

As to causation, Roman determines the outcome here.

The reason: as in Roman, there are plausible allegations in this case of the municipal police department "rarely act[ing] on citizen complaints" as to one of the issues that is at the core of the alleged custom, see footnote 7, invoked by the Plaintiff.

As the Complaint here puts it: "[I]n the six (6) years preceding the assault and false arrest of the plaintiff, there were a

---

[7] The custom alleged by the Plaintiff: a "several years[']" pattern of tolerating violations of the rights of people in Paterson to be free of unconstitutional searches and seizures and excessive force. See Complaint at 10 ¶¶ 2, 4.

5

total of 195 excessive force complaints made against officers from the Paterson Police Department and only one of them was sustained, i.e. found guilty." Complaint at 8 ¶ 32.[8]

This means that the "sustained" rate on 2014-19 excessive force complaints came in at around .5%. Cf. Roman, 914 F.3d at 801 (cataloguing the evidence of Newark's "troubling practices," including that "only one complaint out of 261 filed was sustained by department investigators" --- a rate of around .4%).

And the Complaint in this case plausibly alleges that the "sustained" numbers in the run-up to the alleged 2020 incident were the result of systemic problems.

> In the year 2021, the Passaic County Prosecutor's Office began oversight of the Paterson Police Department's Internal Affairs Division, citing a string of poor police conduct that had existed for several years. As part of the process, the prosecutor's office reviewed closed departmental internal affairs investigation[s] as well as cases that were opened in 2018 and beyond and identified several deficiencies in past practices. All investigations that were opened at the start of the oversight were begun anew.

Complaint at 8 ¶ 34.

Also from the Complaint:

> In May 2020, the City of Paterson commissioned an assessment of the Paterson Police Department by the Police Executive Research Forum. An audit determined that the police department's use of force policies, procedures and training were inadequate.

---

[8] Only citizen complaints that are factually "sustained," typically by a police internal affairs-type unit, can open up a police officer to possible discipline. See, e.g., Beck v. City of Pittsburgh, 89 F.3d 966, 968-69, 975 (3d Cir. 1996) (discussing this); see also Craig B. Futterman, H. Melissa Mather & Melanie Miles, The Use of Statistical Evidence to Address Police Supervisory and Disciplinary Practices: The Chicago Police Department's Broken System, 1 DePaul J. for Soc. Just. 251, 268 (2008) (describing the meaning of "sustained rates").

6

Id. ¶ 33.

The Plaintiff has, in short, alleged a "sustained" rate of .5% as to excessive-force claims; a prosecutor stepping in to take over the police department's internal affairs function because of "several years" of "poor police conduct"; and a review commissioned by the Defendant itself that found police department "use of force . . . procedures . . . were inadequate."

All of this makes for allegations as to causation that are roughly as plausible as those that were in play in Roman. The Paterson Police Department is alleged to have "rarely acted on citizen complaints," Roman, 914 F.3d at 799 (cleaned up), as to excessive force --- and excessive force is at the core of both the custom invoked by the Plaintiff, see footnote 7, and the conduct to which she was allegedly subjected. See Complaint at 6 ¶ 19.

Accordingly, the Defendant's argument that causation has not been plausibly alleged here is not persuasive.

\*   \*   \*

The Defendants' next argument: that the Plaintiff has not plausibly alleged that there was a custom. See footnote 7 (describing the custom).

This question is a closer one.

But what is needed now "is not an ironclad allegation, but a plausible one," Bradshaw v. CHW Grp., Inc., 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025) --- and the Plaintiff has checked that box. See generally McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 269 n.3 (3d Cir. 2016) ("The plausibility standard does not impose a probability requirement; it only requires a pleading to show more than a sheer possibility that a defendant has acted unlawfully.") (cleaned up); Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (similar).

The Third Circuit has held that a badly deficient approach to addressing citizen complaints as to police conduct in a given area can help to establish that there was an impermissible "custom" in that area. See Bielevicz v. Dubinon, 915 F.2d 845, 852 (3d Cir. 1990) (so holding).

And here, as noted above, there are allegations of deficient handling of excessive force complaints --- including a takeover

7

of the police department's internal affairs function by a prosecutor's office, see Complaint at 8 ¶ 34, and a negative audit finding by an outside firm hired by the Defendant, see id. ¶ 33.

Moreover, the Complaint includes direct allegations as to the existence of the other key part of the "custom" invoked by the Plaintiff.

That alleged custom involves illegal searches and seizures, see footnote 7, and the Complaint alleges that the Plaintiff was illegally stopped and searched by police officers, who then falsified paperwork after the fact. See Complaint at 9 ¶¶ 2-4; id. at 11 ¶ 4.

Per the Complaint, during the years prior to the alleged incident involving the Plaintiff, see id. at 6 ¶ 21, six other police officers employed by the Defendant were federally prosecuted and pleaded guilty, all for conduct that is, as described, roughly similar --- illegal stops and seizures, plus falsification of police records.⁹  See id.

---

⁹  To be sure, these six alleged convictions may not be telling on a closer look.  They may all involve a single course of conduct, for example, which might at least potentially render them less telling as evidence of "standard operating procedure." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (cleaned up); cf. Gonzalez v. Borough of Red Bank, 2020 WL 2029338, at *10 (D.N.J. Apr. 28, 2020) (two civil lawsuits against certain police officers were "isolated incidents of potential misconduct" that could not "be said to have put the Municipal Defendants on notice"); Gerber v. Sweeney, 292 F. Supp. 2d 700, 712 n.12 (E.D. Pa. 2003) ("[I]solated incidents cannot establish a policy, practice or custom."); King v. City of Phila., 2002 WL 1277329, at *16 (E.D. Pa. June 4, 2002) (similar); Izqueirdo v. Sills, 68 F. Supp. 2d 392, 410 (D. Del. 1999) (similar).  Or they might have involved factual situations that are far afield --- such that they do not meaningfully help to establish a custom.  See generally Roman, 914 F.3d at 798 (a plaintiff must generally allege that the municipality knew of "similar unlawful conduct in the past") (emphasis added and cleaned up).  Arguments along these lines have not been developed to this point by the Defendant.

And the case law is clear: when conduct allegedly (a) repeated itself over and over,[10] and (b) was visible in some substantial way to senior municipal officials[11] --- that weighs in favor of the conclusion that the conduct plausibly adds up to a "custom."

---

[10] See, e.g., Roman, 914 F.3d at 799 (allegedly "widespread" warrantless searches and false arrests); Cooper v. City of Paterson, 2024 WL 1298917, at *4-*5 (D.N.J. Mar. 27, 2024) (allegations of (a) several prior specific incidents involving excessive use of force, (b) a report that identified a "high rate of force being used," and (c) the New Jersey Attorney General assuming control of the police department due to "numerous incidents of alleged unreasonable use of force"); Clayton v. City of Newark, 2021 WL 6062342, at *7 (D.N.J. Dec. 22, 2021) (seven alleged instances of previous excessive force by the municipal police department, along with a Department of Justice report that showed "a long-standing history of constitutional violations") (cleaned up); Witt v. City of Vineland, 2021 WL 3465597, at *5 (D.N.J. Aug. 6, 2021) ("numerous incidents of alleged excessive force against [the plaintiff], plus the two alleged similar incidents against" other inmates) (emphasis added); Black-Meadows v. Deptford Twp., 2021 WL 1382147, at *5 (D.N.J. Apr. 13, 2021) (59 previous complaints of excessive force investigated by the police department and two specific allegations against a particular officer); Boyden v. Twp. of Upper Darby, 5 F. Supp. 3d 731, 743 (E.D. Pa. 2014) (five specific alleged previous incidents involving the use of excessive force); see also Simpson v. Ferry, 202 F. Supp. 3d 444, 453 (E.D. Pa. 2016) (allegations of over 1,200 police misconduct lawsuits); but see Khalil v. City of Paterson, 2018 WL 6168191, *5 (D.N.J. Nov. 26, 2018) (allegations about a statistical increase in excessive force complaints were not enough, standing alone, to support a Monell failure-to-train claim); Alsaidi v. City of Paterson, 2024 WL 4053085, at *7-*8 (D.N.J. Sept. 5, 2024) (references to arrests of police officers, without citations, and a citation to a different case that discussed statistics about excessive force complaints in the same defendant-city, were insufficient to plausibly state a claim). Why does it matter that conduct repeats itself?  Because a custom is based on practices so "persistent" and "longstanding," Lindke v. Freed, 601 U.S. 187, 200 (2024); Jett, 491 U.S. at 737, that they harden into "standard operating procedure". Jett, 491 U.S. at 737.

[11] See, e.g., Roman, 914 F.3d at 806 ("These alleged practices were ongoing when [the plaintiff's] search and arrest occurred, and the [defendant] had notice of them at that time."); Beck, 89

9

And as noted just above, there are plausible allegations here as to both (a) and (b).

\* \* \*

Per the Third Circuit, "to sustain a § 1983 claim for municipal liability, the plaintiff must simply establish a municipal custom coupled with causation --- i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." Beck, 89 F.3d at 972 (cleaned up).

The Plaintiff has plausibly made such allegations here. The Defendant's motion to dismiss is therefore denied, as to both the § 1983 and New Jersey Civil Rights Act claims.

---

F.3d at 973 (evidence suggested that a reasonable jury could have inferred that policymakers knew of the relevant custom); Stokes v. City of Phila., 2023 WL 362006, at \*10 (E.D. Pa. Jan. 23, 2023) ("[The plaintiff] has alleged an extensive pattern of constitutional violations by City employees and, at least, constructive knowledge of these violations by the City. This knowledge is ascribable to City policymakers due to its widespread, well settled nature."); Black-Meadows, 2021 WL 1382147, at \*4-\*5 (allegations of a failure to sufficiently investigate and address excessive force complaints could be sufficient to infer the defendant's acquiescence to misconduct); Simpson, 202 F. Supp. 3d at 453 (allegations of relevant lawsuits and the amount the city paid out in damages and settlements were sufficient to plausibly allege that policymakers "were generally aware of the frequency with which excessive force violations occurred"); Worrall v. City of Atl. City, 2013 WL 4500583, at \*4 (Aug. 20, 2013) (citing Beck and discussing the defendant's notice of past misconduct); see also Moresi v. City of Phila., 2015 WL 4111724, at \*4 (E.D. Pa. July 8, 2015) (noting, in granting a motion to dismiss, the plaintiff's failure to show that the defendant "had knowledge of, and acquiesce[d] to the practices [the plaintiff] delineates") (cleaned up). Visibility and knowledge of misconduct matters because "[c]ustom may be established by proof of knowledge and acquiescence." Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989); see also Jett, 491 U.S. at 737 (discussing the need for the jury to determine whether policymakers' "acquiescence in a . . . custom" caused a deprivation of rights) (emphasis added).

IT IS on this 19th day of February, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

11